428 S.E.2d 523

E.H., et al., Petitioners Below, Appellees,

v.

Khan MATIN, et al., Respondents Below,

W. Donald Weston, M.D., Acting Director, West Virginia Department of Health and Human Resources, Respondent Below, Appellant,

District 1199, The Health Care and Social Service Union–SEIU, AFL–CIO, Intervenor.

No. 21467.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1993.

Decided Feb. 25, 1993.

Mario Palumbo, Atty. Gen., Jeffrey K. Matherly, Deputy Atty. Gen., Charleston, for appellees.

Daniel F. Hedges, Charleston, for appellant.

Larry Harless, Evans, for intervenor Dist. 1199, The Health Care and Social Service Union–SEIU, AFL–CIO.

MILLER, Justice:

This is an appeal by the West Virginia Department of Health and Human Resources from a September 1, 1992 order of the Circuit Court of Kanawha County, which enjoined its plan to build a 150–bed mental health facility near Weston, West Virginia. This controversy stems from our earlier decision in *E.H. v. Matin*, 168 W.Va. 248, 284 S.E.2d 232 (1981), where we held that the State must comply with the detailed provisions of W.Va.Code, 27–5–9 (1977), which concerns the treatment of mental patients.[1] To accomplish this legislative mandate, we remanded the case to the Circuit Court of Kanawha County to

---

1. The Syllabus Points of *E.H. v. Matin, supra,* state:

    "1. *W.Va.Code,* 27–5–9 [1977] provides specific rights to all mental patients confined in the State hospitals of West Virginia and these rights may be enforced by an action in mandamus against the responsible state officials.

    "2. *W.Va.Code,* 27–5–9 [1977] requires a system of custody and treatment in State mental hospitals which reflects the competent application of current, available scientific knowledge.

    "3. It is the obligation of the State to provide the resources necessary to accord inmates of State mental institutions the rights which the State has granted them under *W.Va.Code,* 27–5–9 [1977]."

oversee the development of a comprehensive mental health plan.

After a number of hearings, the parties agreed and the circuit court accepted in October of 1983 what is termed the West Virginia Behavioral Health System Plan (BHSP).[2] As originally approved by the circuit court, the existing Weston Hospital was to provide no more than 250 beds for the chronically mentally ill and additional bed space for substance abuse and forensic services.

Subsequently, in July of 1986, the appellants, with the agreement of the appellees, obtained a modification of the 1983 circuit court order. In this order, the appellants agreed to construct a new psychiatric hospital containing no more than 250 beds for the mentally ill and also to provide for forensic services for no more than fifty adults. The completion date for the construction of this new facility was set at June 30, 1989.

The circuit court issued a restraining order in July of 1988 against the appellants requiring them to justify how the proposed new psychiatric facility would be built without endangering the overall funding of the BHSP. The appellants responded by outlining a financing plan which involved the issuance of revenue bonds by the West Virginia Hospital Finance Authority, pursuant to its authority under W.Va.Code, 16–29A–1, et seq., and in accordance with its Bond Resolution of July 19, 1989. The legislature had approved and authorized this financing in its 1988–89 budget in Account No. 8500 of the Hospital Services Revenue Account of the State Department of Health.[3]

The question of financing the new hospital was apparently resolved by the parties and another agreed order was approved by the lower court on December 14, 1989. Under this order, the bed number was reduced to 150 for psychiatric care and forty for the forensic unit. It appears that the completion construction date was extended into calendar year 1992. Thereafter, another agreed order was entered on July 18, 1990, doing away with the 40–bed forensic unit and leaving 150 beds for the treatment of the mentally ill.

Thereafter, the State Hospital Authority issued the revenue bonds and site preparation was begun for the construction of the hospital. However, on June 3, 1991, the appellees filed a motion asking the circuit court to prevent the construction of the hospital by amending its July 18, 1990 order. The reasons advanced were that the State should not spend the money on a new hospital facility because there were community mental health facilities that could be utilized. Moreover, it was claimed that Medicaid funds which could be obtained through community mental health facilities could not be obtained at the new hospital. Finally, the appellees asserted that it would be cheaper to build several regional facilities than to build the larger new hospital.

The circuit court ordered that a hearing on this issue be held before its court monitor on August 9, 1991. Subsequently, the monitor filed formal recommendations with the circuit court on September 6, 1991. Almost one year later, on August 31, 1992, the circuit court issued an opinion letter which concluded that the State should not construct the 150–bed hospital facility.[4] An order prohibiting the construction of the hospital was entered on September 18, 1992. It required the appellants to develop

2. This document, consisting of some 330 pages, outlines the various standards, conditions, and facilities in the system, as well as proposed financing. The general scope of the plan may be gleaned from its chapter headings:

"§ 2—Patient Treatment and Habilitation Standards in Inpatient Facilities
"§ 3—Psychiatric and Psycho–Geriatric Services
"§ 4—Developmentally Disabled Services
"§ 5—Alcoholism and Drug Abuse Services
"§ 6—Juvenile Services

"§ 7—Standards for Training, Staff Development and Personnel
"§ 8—Monitoring
"§ 9—Comprehensive Continuum of Behavioral Health Care—Community Services"

3. This financing has been carried through in later legislative budgets.

4. We are at a loss to understand why the circuit court delayed acting on the monitor's recommendations for this extended period of time.

a plan "based on a regionalized concept for individuals needing acute and extended inpatient psychiatric treatment."

Prior to the entry of the circuit court order, the appellants on September 3, 1992, filed a motion for stay of the circuit court order pending an appeal. We granted a sixty-day stay and subsequently the appellants filed their petition for appeal, which we granted on November 9, 1992. We set an expedited final hearing on the appeal for January 19, 1993.

## II.

A number of parties were granted *amicus curiae* status and have filed briefs. Most of these briefs address the merits of the circuit court's ruling blocking the construction of the new hospital and ordering the appellants to submit a plan for regional facilities. As discussed more fully below, we decline to address this issue as we conclude that the appellees and the circuit court were without authority to challenge the project.

It appears that both the appellees and the circuit court may have misconstrued the nature of our mandate in the remand of *E.H. v. Matin, supra.* It was not our intention to have the circuit court operate as some type of a judicial super-secretary over the actions of the West Virginia Department of Health and Human Resources. In fact, in *Matin,* we cautioned:

"Where there is a good faith difference of opinion among equally competent professional experts concerning appropriate methods of treatment and custody, such differences should be resolved by the director of the West Virginia Department of Health and not by the courts." 168 W.Va. at 259–60, 284 S.E.2d at 238.

■ More to the point of this case, we have recognized that ordinarily it rests with the legislature to make the determination to close a statutorily created facility. As we explained in the Syllabus of *De-*

*Vault v. Nicholson,* 170 W.Va. 719, 296 S.E.2d 682 (1982): "Where a women's prison has been created by a legislative act, *W.Va.Code,* 28–5C–1 [1947] *et seq.,* a legislative act is required to close it." *See also Jones v. Rockefeller,* 172 W.Va. 30, 303 S.E.2d 668 (1983).

■ We believe that a corollary rule applies where the legislature, through the budget process, expressly provides for funding to build a new public facility, as was done here. Absent some constitutional challenge or an express statutory provision to the contrary, the courts are not authorized to interfere with the legislative mandate. This principle rests on two grounds. The first ground is our traditional recognition of the plenary powers of the legislature which are subject only to constitutional constraints. The second ground for judicial noninterference is equally venerable; it is our constitutional doctrine of separation of powers contained in Article V, Section 1 of the West Virginia Constitution.[5] Thus, with regard to constitutional challenges against legislative action, we exercise due restraint before finding unconstitutionality. These two principles are found in Syllabus Point 1 of *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965):

"In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitution-

5. Article V, Section 1 of the West Virginia Constitution states:
"The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature."

ality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt."

*See also* Syllabus Point 1, *Robinson v. Charleston Area Medical Center,* 186 W.Va. 720, 414 S.E.2d 877 (1991); Syllabus Point 2, *West Virginia Public Employees Retirement System v. Dodd,* 183 W.Va. 544, 396 S.E.2d 725 (1990); *State ex rel. Metz v. Bailey,* 152 W.Va. 53, 159 S.E.2d 673 (1968).

Moreover, we have held that ordinarily where a constitutional challenge is made to legislation involving economic matters, the legislation will be upheld if it rests on some rational basis. As we explained in Syllabus Point 2 of *Robinson v. Charleston Area Medical Center, supra:*

" ' " 'Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.' Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* [172] W.Va. [8], 302 S.E.2d 78 (1983)." Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* [174] W.Va. [538], 328 S.E.2d 144 (1984).' Syl. pt. 4, *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991)." [6]

We deem the financing of a public building by the legislature to essentially involve an economic decision.

Here, the appellees made no attempt to assert any constitutional challenge to either the validity of the hospital project or its financing. The hearings be-

low were centered on whether, from a psychiatric standpoint, it was better to construct regional centers or the new Weston Hospital. Expert testimony was divided on this issue. Under our admonition in *Matin, supra,* which we have earlier set out, the final decision rested with the appellants.

Furthermore, we have consistently held that principles of estoppel will preclude a party from asserting inconsistent positions during litigation. This principle was stated in Syllabus Point 2 of *Dillon v. Board of Education,* 171 W.Va. 631, 301 S.E.2d 588 (1983):

" 'Parties will not be permitted to assume successive inconsistent positions in the course of a suit or a series of suits in reference to the same fact or state of facts.' Syllabus, *MacDonald v. Long,* 100 W.Va. 551, 131 S.E. 252 (1926)."

In this case, since the approval of the original BHSP in 1983, it was contemplated that a psychiatric hospital would exist. Certainly, the July 1986 agreed modification specifically required the appellants to abandon the old Weston Hospital and construct a new one. After this date, the various modification orders to which the parties agreed dealt only with the number of beds and not with the basic concept of having such a hospital. Of even more concern is that after the circuit court's inquiry into the financing mechanism for the hospital and its approval, the appellees made no objection to the concept of building the new hospital.

It was not until the bonds were issued, the construction plans were finalized, and construction started that the appellees challenged the wisdom of building the hospital. Clearly, this shift of position was barred by the principles of estoppel as stated in *Dillon, supra.*

The actions taken in this case by the trial court bear some resemblance to those set

---

**6.** This test is designed to meet constitutional claims based on a denial of equal protection, substantive due process and special legislation where economic legislation is involved. In *Crain v. Bordenkircher,* 176 W.Va. 338, 342 S.E.2d 422 (1986), we determined that the West

Virginia penitentiary at Moundsville was so unsuitable for use that it violated cruel and unusual punishment concepts contained in the Eighth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution.

out in Syllabus Point 2, in part, of our recent decision in *Pell v. Board of Education*, 188 W.Va. 718, 426 S.E.2d 510 (1992):

"If a comprehensive educational facilities plan has been developed by a county board of education, approved by the state board of education, submitted to a regional educational services agency, granted approval for funding on a priority basis by the state school building authority, satisfied all requirements for approval, notice, and hearing pursuant to *W.Va. Code*, 18–5–13a [1991], and contracts have been entered into to begin implementation of such plan, then it is arbitrary and capricious for a county board of education, with no articulated reasons, to take action that would cause the plan to not be implemented or to replace such plan with an alternative plan, where such action would place in jeopardy the possibility of obtaining the approved funding."

For the foregoing reasons, we find that the circuit court erred in enjoining the appellants from proceeding with the construction of the new psychiatric hospital facility and its order is, therefore, reversed. Furthermore, we are concerned with continued judicial involvement in the BHSP. As we have observed, the earlier remand of this case to the circuit court was not designed to allow perpetual judicial control over the decisions of the West Virginia Department of Health and Human Resources relating to the BHSP. We, therefore, delay the remand of this case for thirty (30) days. We request the parties file a written response advising this court of whether there is any need for continued monitoring by the Circuit Court of Kanawha County.

Reversed and Remand Delayed for Thirty Days.