468 S.E.2d 915

Andrew HABA, Janet Lowry Haba, as Administrators of the Estate of Andrew J. Haba, Plaintiffs Below, Appellants,

v.

The BIG ARM BAR AND GRILL, INC.; Alto's Club, Inc.; Harry Camper, Commissioner, Alcohol Beverage Control Commission; State of West Virginia; James H. Paige, III, Secretary, West Virginia Department of Taxation and Revenue; Michael Ian Hulburt; Robert A. Hulburt; James K. Hutzler; Robert Vaughn, Trustee; and Robert Vaughn and Ruth Vaughn, Defendants Below, Appellees.

No. 22706.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1996.

Decided March 1, 1996.

Homer Speaker, Martinsburg, for Appellants.

Robert J. Schiavoni, Joseph R. Ferretti, Hammer, Ferretti & Schiavoni, Martinsburg, for Appellee, Alto's Club, Inc.

Catherine D. Munster, Robert W. Trumble, McNeer, Highland & McMunn, Clarksburg, for Appellees, Michael Ian Hulburt and Robert A. Hulburt.

Patrick G. Henry, III, Henry, Grant, Taylor & Janelle, Martinsburg, Michael D. Lor-

ensen, Bowles, Rice, McDavid, Graff & Love, Martinsburg, for Appellee, James K. Hutzler.

ALBRIGHT, Justice:

This is an appeal from orders of the Circuit Court of Jefferson County granting summary judgment in favor of the defendants in a wrongful death action. Appellants, Andrew and Janet Haba, argue that the circuit court erred in using collateral estoppel and comparative negligence as the bases for granting summary judgment. Appellants contend that their claim is not barred by either theory under the specific facts and circumstances of this case. We disagree. We find that the circuit court properly applied the doctrines of collateral estoppel and comparative negligence in this case. Accordingly, we affirm.

On November 29, 1990, Andrew J. Haba, along with some of his friends, went to the Big Arm Bar & Grill (Big Arm) where he apparently became intoxicated from drinking alcoholic beverages. Haba, a freshman football player at Shepherd College, was under the legal drinking age of twenty-one years. In the early morning hours of November 30, 1990, Haba and his friends left Big Arm and traveled to Alto's Club (Alto's). Haba parked his car on the shoulder of the west bound lane of Route 45, a public highway, and attempted to cross the road to Alto's. He ran into the path of a Pontiac Fiero that was owned by Robert A. Hulburt and operated by Robert's son, Michael Hulburt. The vehicle struck Haba, and the force of the impact caused his body to land on the vehicle, thereby crushing the roof over the passenger seat. Both Haba and Douglas Cleaver, who was in the passenger seat of the Fiero, died from injuries sustained in the accident.

Two wrongful death suits were subsequently filed in Jefferson County. A suit on behalf of the Estate of Douglas Cleaver was filed on or about March 26, 1992, against various defendants, including Big Arm, Michael Hulburt, the Sheriff of Jefferson County, West Virginia, as Ancillary Administrator of the Estate of Andrew J. Haba, deceased, and Erie Insurance Company (Erie), Mr. Haba's insurer.[1] Erie assumed the defense of the Haba interests in the Cleaver case. On November 25, 1992, Andrew Haba and Janet Lowry Haba, as Administrators of the Estate of Andrew J. Haba, deceased, filed their complaint in the instant case, naming as defendants, among others, Big Arm, Alto's, Michael Hulburt and his father, Robert Hulburt, and James K. Hutzler, one of the owners of the real estate which Big Arm rented to conduct its business.[2]

Separate motions to consolidate the two cases were filed by the attorneys provided by Erie to defend the interests of the Sheriff of Jefferson County as Ancillary Administrator of the Estate of Andrew J. Haba and by the Hulburts. The senior Habas, in their capacity as Administrators of the Estate of Andrew J. Haba and as plaintiffs in the case before this Court, opposed both motions, arguing that their suit named defendants not included in the Cleaver suit and, consequently, their case would incorporate legal issues and facts regarding negligence and liability that would not be included in the Cleaver suit.[3] They also claimed that because Cleaver included two insurers as named defendants, it would raise contract and liability issues that would not be raised in their own suit. Finally, the Habas asserted that consolidating the cases would confuse a jury by placing them in the position of being both plaintiffs and defendants. The circuit court denied both motions to consolidate.

---

1. Westfield Insurance Company was also named as a defendant in the Cleaver suit.

2. The original defendants in the Haba's suit also included: Harry Camper, Commissioner, Alcohol Beverage Control Commission, State of West Virginia; James H. Paige, III, Secretary, West Virginia Department of Taxation and Revenue; Robert Vaughn, Trustee, and Robert Vaughn and Ruth Vaughn, co-owners of the real estate leased

to Big Arm. Harry Camper, Commissioner, and James H. Paige, III, were dismissed from the case. The Vaughns were granted summary judgment in an order that is not being appealed.

3. James Hutzler, Robert Hulburt and Alto's were named only in the Habas' suit.

The Cleaver case was set for trial first. On the eve of the Cleaver trial, Andrew and Janet Haba, as Administrators of the Estate of Andrew J. Haba, were substituted in the Cleaver action for the Sheriff of Jefferson County, as the personal representatives of the decedent Haba. However, Erie continued to provide counsel to the Habas, appellants here, in the Cleaver case. Upon trial, the Cleaver jury returned a verdict finding Andrew J. Haba 80% at fault for the subject accident, Big Arm 20% at fault, and Michael Hulburt 0% at fault.

After the verdict was returned in the Cleaver case, each of the remaining defendants in this case filed separate motions for summary judgment on the Habas' complaint. The circuit court granted summary judgments in this action by separate orders filed on June 14, 1994, finding that the claims presented by the Haba plaintiffs were the same claims litigated in the Cleaver case. The court reasoned that the plaintiffs had a full and fair opportunity to litigate all claims relevant to the subject accident during the Cleaver trial, and thus their claim was barred by collateral estoppel. The circuit court further found the Haba claim barred by comparative negligence since the Cleaver jury found that the Habas' decedent was 80% at fault, while defendant Big Arm was only 20% at fault and defendant Hulburt was 0% at fault.

## SUMMARY JUDGMENT

■ On appeal, "[a] circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Moreover, " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. pt. 2, *Miller v. Whitworth*, 193 W.Va. 262, 455 S.E.2d 821

(1995). Based upon the following, we believe the circuit court properly granted summary judgment.

## COLLATERAL ESTOPPEL

■ We have held that "[c]ollateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." Syl. pt. 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

■ Appellants first argue that there has been no final adjudication on the merits of their claim of negligence because the issue of liability with regard to the death of Andrew J. Haba is different from the issue of liability with regard to the death of Douglas Cleaver. We think that the question before us is not whether the ultimate issue of liability is identical. Rather, the question before us is whether there remains any material issue which the appellants have not had a full opportunity to adjudicate either in the Cleaver case or in this one. We have carefully examined the claims as stated in the two actions and the positions asserted by the parties in this appeal and below. In making our analysis, we have also noted that the separate claims raised by the Cleaver plaintiffs in that action and the appellants (plaintiffs below) in this action involve the same circumstances surrounding the same accident. In all material aspects, the same factual issues arise in this action as were litigated in the Cleaver action, and counsel for appellants was unable in oral argument or in the briefs to demonstrate otherwise. Moreover, we find that further "inquiry concerning the facts is not desirable to clarify the application of the law." [4] Thus, we conclude that appellants have failed to save their

4. Syl. pt. 2, *Miller v. Whitworth*, 193 W.Va. 262,     455 S.E.2d 821 (1995).

wrongful death claim from summary judgment by reason of collateral estoppel. In reaching our conclusion, we note especially that appellants here made no claim that Haba counsel in the Cleaver action, provided by Erie, in any way failed to adequately present the Haba case.

■ As noted, we reviewed appellants' assertions that their claim raised issues not determined in the Cleaver action. First, appellants contend that because Robert Hulburt, the father and owner of the car driven by Michael Hulburt, was not a party to the Cleaver trial, his inclusion as a party to the instant case raises new issues. As the circuit court observed and appellants admitted in their brief, Robert Hulburt's liability is derivative of his son's liability. Michael Hulburt was found in the Cleaver trial to be 0% at fault in events leading to and resulting in the accident litigated in that trial. Accordingly, there are no issues remaining to be determined in relation to Robert Hulburt.

Appellants next claim that James Hutzler was not a defendant in the Cleaver trial and that issues regarding his liability remain undetermined. Appellants' complaint alleged that James Hutzler knew or reasonably should have known that Big Arm, his tenant, sold alcoholic beverages to underage individuals in violation of State law. Therefore, appellants further contend that Hutzler may be held liable to appellants in this action for injuries sustained by the decedent Haba. West Virginia Code § 60–3–22 (1986), at the time of the incident involved in this case, provided, in pertinent part, that "[a]lcoholic liquors shall not be sold to a person who is: (1) less than twenty-one years of age...." This provision was interpreted in *Overbaugh v. McCutcheon*, 183 W.Va. 386, 396 S.E.2d 153 (1990). We stated, "[c]learly, the legislature did not intend for this statute to apply to anyone except sellers of alcoholic beverag-

es. Consequently, in the absence of legislation, the only other way to impose social host liability would be by utilizing a common law negligence approach." *Id.* at 389, 396 S.E.2d at 156. In another case related to the case at bar, we further explained that "[j]ust as there is no 'dram shop' or social host liability legislation in West Virginia, there are also no statutory enactments directed specifically towards imposing liability upon the owners of property upon which alcoholic beverages are served." *Farmers & Mechanics Mutual Fire Insurance Company of West Virginia v. Hutzler*, 191 W.Va. 559, 561, 447 S.E.2d 22, 24 (1994). Since no liability has been legislatively imposed upon owners of real estate such as James Hutzler, who simply rent or lease real estate to a bar which may serve underage patrons, we look next to the common law theories upon which appellants have relied in support of their claim.

In their response to Mr. Hutzler's first petition for summary judgment,[5] appellants stated that James Hutzler was personally named as a defendant in this action on the theory that, as an owner of the property upon which Big Arm is located, he had a landlord's duty to maintain a reasonably safe property. They assert that he violated that duty by allowing Big Arm to sell alcohol to minors.

■ The appellants concede that landlord/tenant cases have based landlord liability on structural defects in the property. They argue, however, that the language "maintaining a reasonably safe property" should be interpreted to include a duty to establish guidelines for preventing the sale of alcohol to minors when the tenant is known to sell alcohol. We have thoroughly reviewed the cases appellants cite in support of their argument and have conducted our own research.[6] The authorities cited by appellants establish that there are certain circum-

---

5. The court denied defendant Hutzler's motion on a finding that there was "sufficient indicia of a potential relationship between Defendant Hutzler and Big Arm Bar and Grill, Inc. other than merely a landlord-tenant relationship to satisfy

the court that summary judgment ... would be precipitous prior to the close of discovery."

6. *See Pack v. VanMeter*, 177 W.Va. 485, 354 S.E.2d 581 (1986); *Cowan v. One Hour Valet*, 151 W.Va. 941, 157 S.E.2d 843 (1967); *Marsh v.*

stances in which a landlord will be liable to tenants' invitees injured due to the physical condition of the landlord's property. Appellants, however, have failed to plead a ground, nor have we found any authority, establishing the liability of a landlord to third parties for the failure of a tenant to lawfully conduct an otherwise lawful business involving the sale of alcoholic beverages. Appellants have failed to establish a cause of action against Mr. Hutzler and have similarly failed to establish the existence of any unlitigated legal or factual issues relating to Mr. Hutzler that would overcome collateral estoppel.

Appellants also assert that there are unresolved issues pertaining Alto's, another defendant that was not a party to the Cleaver trial. Appellants allege that Alto's was negligent in failing to provide adequate lighting, parking, and warning. The issue of adequate lighting was addressed in the Cleaver trial, wherein appellants presented evidence that the lighting in the area of the accident was adequate for purposes of crossing a highway and was not a proximate cause of the subject accident. Thus, they are estopped from raising that issue now. " ' "Parties will not be permitted to assume successive inconsistent positions in the course of a suit or a series of suits in reference to the same fact or state of facts." Syllabus, *MacDonald v. Long*, 100 W.Va. 551, 131 S.E. 252 (1926).' Syllabus point 2, *Dillon v. Board of Education*, 171 W.Va. 631, 301 S.E.2d 588 (1983)." Syllabus point 3, *E.H. v. Matin*, 189 W.Va. 102, 428 S.E.2d 523 (1993).

We next address the remaining issues related to Alto's, that Alto's failed to provide adequate parking and warning. Although appellants do not so state, it is assumed their complaint with regard to inadequate warning is that Alto's failed to warn its customers of the dangers of parking on Route 45 and attempting to cross the highway to Alto's. Appellants have not provided and we can find

no authority establishing that a business has a duty to provide a certain quantity of parking or a duty to warn its customers of the dangers of crossing a public highway, absent an ordinance or statute creating either such duty. Absent a duty owed which may have been violated by the defendant Alto's, we cannot conclude that appellants might prevail against Alto's in the trial of this cause.

Appellants further argue that they were denied a full and fair opportunity to litigate their claim. They assert that they substituted themselves as parties on the eve of trial at the request of Erie.[7] The Habas claim that they had nothing to do with the manner in which the defense of the actions of Andrew J. Haba were litigated on appellants' behalf by the attorneys hired by Erie. This Court appreciates the disappointment of appellants in that regard. We recognize that "[a] fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim." Syllabus point 8, *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). However, we believe appellants had a full and fair opportunity to have their claims heard and to have all the parties they wished before the circuit court in the Cleaver trial. Instead, while represented by their own choice of counsel, appellants elected to resist consolidation of their claims with the Cleaver action and also chose not to implead Mr. Hutzler or Alto's in the Cleaver action.

Appellants assert that they had substantial reasons for opposing consolidation: (1) Consolidation would have resulted in Haba's estate being a defendant, represented by the insurance company's attorneys, as well as a plaintiff, represented by the attorneys of the estate's choice; (2) until the eve of trial, the parties representing Haba's estate were not the same; (3) the two cases

---

*Riley*, 118 W.Va. 52, 188 S.E. 748 (1937); and *Stewart v. Raleigh County Bank*, 121 W.Va. 181, 2 S.E.2d 274 (1939).

7. The Habas assert that they had a duty to cooperate with their insurance company in the defense of the Cleaver claim, otherwise their coverage could have been jeopardized.

involved different parties and different theories of recovery; and (4) consolidation would have confused the jury.

■ Although appellants argue that appearing as plaintiffs as well as defendants in the Cleaver action would have prejudiced their claim, they fail to explain how such prejudice would have occurred. Moreover, during oral argument counsel for the appellants was asked whether the interests of Haba's estate were ever under-represented, to which counsel answered in the negative. It is also notable that Haba's estate filed cross-claims against defendants Big Arm and Michael Hulburt in the Cleaver action and that appellants, through counsel provided by Erie, actively litigated the negligence of Michael Hulburt. We perceive that the only complaint appellants raise regarding the representation provided by their counsel in the Cleaver action is that counsel was provided by Erie. This complaint alone is not sufficient to overcome collateral estoppel. We sanction the view that "an insurer's attorney, employed to represent an insured, is bound by the same high standards which govern all attorneys, and owes the insured the same duty as if he were privately retained by the insured." *Norman v. Insurance Co. of North America,* 218 Va. 718, 727, 239 S.E.2d 902, 907 (1978). In the absence of any claim to the contrary, it appears that the counsel employed by Erie to represent Haba's estate in the Cleaver action adequately discharged that duty. We have previously discussed in this opinion the substance of appellants' third reason for resisting collateral estoppel, that the two cases involved different parties and different theories of recovery, and our rationale for rejecting appellants' arguments in that regard. We are similarly unpersuaded by appellants' fourth assertion, that consolidation would have caused jury confusion.

■ In a case involving offensive collateral estoppel, we stated, "[b]ecause one of the purposes underlying the collateral estoppel doctrine is to limit repetitive litigation and encourage joinder, courts have concluded that a plaintiff may be denied collateral estoppel benefits if he cannot advance a substantial reason why he did not join in the original litigation." *Conley v. Spillers,* 171 W.Va. at 592, 301 S.E.2d at 223. Although the case here is one of defensive collateral estoppel, we find that the principle of *Conley* can be analogized to the case before us. Here, the parties resisting estoppel are parties who sought to prevent consolidation of the two actions. They participated, at least passively, in Cleaver and make no claim that their interests were under-represented when the issues material to their case here were litigated in the prior action. If we had before us a claim of under-representation, a different result might obtain. Appellants have advanced no substantial reason why their passive participation in the Cleaver litigation should not bind them to the factual determinations made by the jury in that case. Accordingly, we hold that, in the absence of a claim of under-representation, parties to a prior civil action who resisted consolidation of that action with a separate cause of action based on the identical factual issues are bound by the factual determinations made in the prior action and estopped from re-litigating those issues in the second action, even though those parties consider their participation in the prior litigation passive.

## COMPARATIVE NEGLIGENCE

The circuit court granted summary judgment based in part upon its conclusion that any Haba claim was barred by comparative negligence. The court below reasoned that the Cleaver jury had previously determined that Haba was 80% at fault for the accident, while Big Arm was found to be only 20% at fault and Michael Hulburt [8] was found to be 0% at fault.

■ In *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), this Court adopted the doctrine of comparative negligence and held, in syllabus point 3, "[a] party is not barred from recovering damages in a tort action so long as his negli-

---

**8.** As noted previously, Robert Hulburt's liability was derivative of Michael's.

gence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident." In explaining how this rule operates, we stated "[t]he jury should be required by general verdict to state the total or gross amount of damages of each party whom they find entitled to a recovery, and by special interrogatory the percentage of fault or contributory negligence, if any, attributable to each party." *Id.* 256 S.E.2d at 885, 886. We then clarified the meaning of "each party" in syllabus point 3 of *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981), wherein we held "[i]n order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, it must be ascertained in relation to all of the parties whose negligence contributed to the accident, and not merely those defendants involved in the litigation."

 Appellants interpret *Bowman* to mean that the purpose of comparative negligence is to compare the negligence of a plaintiff with the negligence of other parties to a particular event. Thus, appellants reason, because the Estate of Andrew J. Haba was a defendant in the Cleaver trial, rather than a plaintiff, the jury determination of the decedent's fault does not bar his estate's claim. We disagree with appellants' interpretation. First, our rule of comparative negligence, as adopted in *Bradley,* states that "[a] *party* is not barred from recovering damages...." (Emphasis added.) Clearly, this rule does not limit the applicability of comparative negligence only to plaintiffs. Furthermore, the rule in *Bowman* was stated in terms of a plaintiff because that case dealt specifically with the determination of a plaintiff's negligence. Where a jury has determined a defendant's comparative negligence in relation to that of all persons whose negligence contributed to a particular event, and such defendant's negligence exceeds the combined negligence of the other persons involved in the event, such defendant is barred by the doctrine of comparative negligence from recovering damages in a subsequent tort action. Consequently, we con-

clude that the circuit court correctly found the trial of this action barred by the determination of the jury in the Cleaver case that the decedent's negligence exceeded the combined negligence of the other parties involved in the accident.

For the foregoing reasons it appears that the summary judgments before us were properly granted in that there is no genuine issue of fact to be tried and further inquiry concerning the facts is not desirable to clarify the application of the law. The June 14, 1994 orders of the Circuit Court of Jefferson County are affirmed.

Affirmed.