UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JENNINGS HOLLAND; JETTA SUE
HOLLAND; KARA HOLLAND; DEBRA
HOLLAND; MARSHA NAPIER; CAROL
RAMEY; JASON SMITH; DAVID RAMEY;
BRANDON HOLLAND,
             *Plaintiffs-Appellants,*

             v.

STEPHEN KOHN; DAVID COLAPINTO;
KOHN, KOHN, & COLAPINTO, P.C.,
             *Defendants-Appellees.*

No. 00-1195

CHRISTOPHER S. RAMEY,
             *Plaintiff-Appellant,*

             v.

STEPHEN KOHN; DAVID COLAPINTO;
KOHN, KOHN, & COLAPINTO, P.C.,
             *Defendants-Appellees,*

             and

MICHAEL KOHN,
             *Defendant.*

No. 00-1196

Appeals from the United States District Court
for the Southern District of West Virginia at Huntington.
Robert J. Staker, Senior District Judge.
(CA-97-880, CA-99-652)

Argued: April 6, 2001

Decided: June 19, 2001

Before LUTTIG and GREGORY, Circuit Judges, and Rebecca Beach SMITH, United States District Judge, Eastern District of Virginia, sitting by designation.

---

Vacated and Remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Richard Allen Robb, South Charleston, West Virginia, for Appellant. Perry Wayne Oxley, OFFUTT, FISHER & NORD, Huntington, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

In this legal malpractice action, Appellants Jennings Holland, Jetta Sue Holland, Kara Holland, Debra Holland, Marsha Napier, Carol Ramey, Jason Smith, David Ramey, and Brandon Holland (collectively "Appellants" or "Plaintiffs/Appellants") sued their former attorneys, Stephen Kohn and David Colapinto, and the attorneys' law firm, Kohn, Kohn & Colapinto, P.C., (collectively, "Appellees"), for causing the dismissal of a toxic tort action. The district court granted the Appellees' motion for summary judgment, which was based on the doctrine of collateral estoppel. Because a genuine issue of material fact exists regarding whether Appellants received notice and the opportunity to be heard in the toxic tort action, we vacate and remand for further proceedings.

## I.

Appellees began representing Appellants in March 1994 in a toxic tort action that Appellants filed in West Virginia state court against Ashland Oil, Incorporated (the "State Court Action"). *Holland v. Ashland Oil, Inc.*, Civil Action No. 91-C-631. On November 11, 1994, Ashland Oil propounded Interrogatories and Requests for Production on each individual Plaintiff/Appellant in the State Court Action. Ashland Oil subsequently agreed to extend the Plaintiffs'/Appellants' time to respond to the discovery until December 31, 1994, and later to January 5, 1995. Between November 11, 1994 and January 5, 1995, neither Plaintiffs/Appellants nor Appellees made much progress in responding to the discovery requests.

On February 1, 1995, Ashland Oil filed a Motion to Compel against the Plaintiffs/Appellants and Appellees for failing to respond to discovery. Ashland Oil served the motion on Appellees. Appellants assert, and Appellees do not deny, that they personally did not receive copies of the motion. Nothing in the record suggests that Ashland Oil filed or served a Notice of Motion setting the Motion to Compel for hearing.

On February 3, 1995, Appellees filed a Motion and Notice of Motion to Withdraw. The Notice of Motion stated that the matter would be heard on February 9, 1995, and that it was served on each Plaintiff/Appellant. The Motion referred to "irreconcilable differences between plaintiffs' counsel and the clients", but stated that it would not provide specifics for fear of violating the attorney-client privilege.

On February 4, 1995, Appellees responded to Ashland Oil's Motion to Compel on their own behalf, but not on Appellants' behalf. Appellees' response stated that Appellees were filing it "on [their] own behalf because [Ashland Oil's] motion requests that sanctions be assessed against counsel for plaintiffs in addition to plaintiffs themselves" and because "[o]n February 3, 1995, plaintiffs' attorneys filed a motion to withdraw as plaintiffs' counsel[.]" Appellees' response further stated that "some of the irreconcilable differences that have arisen between plaintiffs and their counsel relate to issues raised by defendant in its motion to compel[.]" Appellees also stated that they, "[w]ithout success . . . attempted to resolve those irreconcilable differ-

ences." The certificate of service accompanying the response stated that Appellees served the motion on Ashland Oil and all individual Plaintiffs/Appellants on February 4. Appellants, though, claim they never received a copy of Appellees' response to the Motion to Compel.

At a February 9, 1995 hearing in the State Court Action, Appellees filed a Memorandum in Support of their Motion to Withdraw. This Memorandum related purported financial disagreements between the Plaintiffs/Appellants and Appellees, as well as difficulties Appellees purportedly experienced in receiving information from the Plaintiffs/Appellants sufficient to respond to Ashland Oil's discovery requests. Appellees' Memorandum stated that "[s]ince October 1994, the plaintiffs have become increasingly less cooperative — to the point of exhibiting anger, hostility and total non-cooperation towards [Appellees] and requests for information." Appellees' Memorandum related several examples of the Plaintiffs'/Appellants' purported failure to cooperate, as well as various incidents supporting Appellees' motion to withdraw.[1]

At the hearing in the State Court Action, the state court noted that several individual Plaintiffs/Appellants had submitted letters to the court opposing Appellees' motion to withdraw. The judge ordered Appellees to explain to the Plaintiffs/Appellants that their opposition to the motion to withdraw constituted a waiver of the attorney-client privilege. After a brief recess during which Appellees complied with the court's order to meet with the Plaintiffs/Appellants and explain the attorney-client privilege to them, Appellee Colapinto reported to the court that "I don't know that they fully understand" that they were waiving the attorney-client privilege. Nonetheless, the court ruled that each Plaintiff/Appellant who made a written or oral objection to Appellees' Motion to Withdraw waived the attorney-client privilege. The court then heard testimony from Plaintiff/Appellant Sue Holland in response to the specific allegations made in Appellees' Memorandum in support of their Motion to Withdraw. At the start of Ms. Hol-

---

[1]For example, Appellee alleged in the Memorandum that one plaintiff "was so angry [at Appellees] that she threatened to hire someone to kill her attorneys if, in her opinion, they got out of line."

land's testimony, Ashland Oil's counsel made the following statement:

> Mr. Parnell: I only have one observation . . . . The plaintiffs are currently in disobedience of the Court's discovery order. I can't tell who it is that has done what, but I can say to the extent that it turns out that a client, that is, a plaintiff, has wilfully failed to do things, I believe we have an interest in requesting that those parties, to the extent that they have not — either have Rule 11 sanctions or dismissal.

This statement by Ashland Oil's counsel was the first mention made at the hearing of Ashland Oil's motion to compel.

In response to Mr. Parnell's statement, Appellee Colapinto stated that "if I am adversarial to my own clients on that issue, I don't see how I can continue as counsel in this matter, and I would move to withdraw on that ground immediately." The court did not respond to Appellee Colapinto's comment, but proceeded to question Ms. Holland.

All of the questions asked Ms. Holland by the court related to Appellee Colapinto's motion to withdraw. Appellee Colapinto declined the court's invitation to question Ms. Holland, citing a discomfort with cross-examining his own client. Mr. Parnell then cross-examined Ms. Holland for Ashland Oil on the issues raised by the motion to compel. Appellees did not object to any of Mr. Parnell's questions or participate in the questioning in any way.

The court then heard from Juanita Smith, another named plaintiff in the State Court Action. The court questioned her solely on issues relating to Appellee's motion to withdraw. Mr. Parnell then cross-examined Ms. Smith regarding the motion to compel. Again, Appellees did not object to any of Mr. Parnell's questions and did not otherwise participate in the questioning.

After receiving Ms. Smith's testimony, the state court allowed Appellee Colapinto to make a statement in response to Ms. Holland and Ms. Smith's testimony. When Ms. Smith objected to the state-

ment, the state court judge stated that "[Appellee Colapinto] listened real patiently while you talked, ma'am. I'm afraid I'm going to have to ask you to do the same, Ms. Smith."

The state court then asked Appellee Colapinto about Ashland Oil's Motion to Compel:

> Q: Is it your representation to the Court that the reason that the discovery deadlines that were agreed to and set by the Court were not complied with was, in its entirety, the responsibility of the plaintiffs?
>
> A (Colapinto): Yes, Your Honor[.]

The court did not ask the same or similar questions of Ms. Holland, Ms. Smith or any other Plaintiff/Appellant.

After receiving Appellant Colapinto's statement, the court allowed Ashland Oil to cross-examine Appellee Colapinto. The Plaintiffs/Appellants did not object to Appellee Colapinto's testimony nor ask to question him. The record is silent as to whether the court would have allowed such objections or questioning.

At the end of Appellee Colapinto's testimony, the court ruled that Appellees were entitled to withdraw as counsel and dismissed the case with prejudice for the Plaintiffs'/Appellants' failure to respond to discovery. On March 7, 1995, the court issued an order in accordance with its bench ruling, stating that "all of the Plaintiffs in this action have failed to cooperate with their counsel in compiling information that is responsive to these discovery requests and accordingly GRANTS Ashland Oil's Motion for Sanctions and . . . will, therefore DISMISS WITH PREJUDICE this action[.]" The court further stated that

> [t]he Plaintiffs in this action constitute the last of over 2200 Plaintiffs that were part of predecessor actions that have been pending in this court and others since as early as 1988. Since these cases have been pending before this court, approximately 700 claims have been settled and approxi-

mately 1500 claims have been dismissed on a variety of grounds, *inter alia*, failure to comply with discovery deadlines. The court's position in this regard is well known to all of the counsel and all of the participants in this action.

The court concluded that "[i]t is clear to this court that the failure to comply with the discovery requests . . . rests with the individual Plaintiffs in this matter."

Subsequently, Appellants filed this suit against Appellees for legal malpractice, alleging that Appellees' negligence caused the State Court Action's dismissal. Appellees moved for summary judgment on the basis of collateral estoppel, asserting that the state court determined that — Plaintiffs/Appellants — were the causes of the action's dismissal. On December 1, 1998, the district court denied Appellees' motion, explaining that a genuine issue of fact existed regarding whether Appellants had a full and fair opportunity to litigate the issue. Specifically, the district court stated that

> [w]hile the plaintiffs were present at the hearing and two of them did testify, it appears from the evidence submitted that their presence and testimony was related to the motion to withdraw. There is nothing in the evidence submitted to this court which shows that the plaintiffs were prepared to defend against a dismissal of their litigation for failure to provide discovery or that they had any opportunity to actually litigate the issue, apart from the statements of their attorneys, who were seeking to withdraw.

More than two years later, the district court reconsidered its decision. The court re-raised the collateral estoppel issue *sua sponte*, sought additional briefing, and held a January 28, 2000 hearing on the matter. The court ruled from the bench, stating:

> [The state court] held a hearing on whether that lawyer would be permitted to withdraw or not. Those plaintiffs were present at that hearing and that lawyer asserted as one of the reasons why those plaintiffs - why he desired to withdraw was their refusal indeed to participate in the discovery

process. The defendant had moved for dismissal or sanc-
tions on that ground.

[The state court] held a hearing on that very issue and made
findings of fact, one of which was that discovery had not
been provided and it was the fault of the plaintiffs them-
selves and not their counsel, an affirmative fact that he
found, and he sets forth that in his order.

Based on this factual analysis, the district court held that collateral
estoppel precluded Appellants from re-litigating the issue of the cause
of the State Court Action's dismissal.

## II.

### A.

We review the district court's summary judgment ruling *de novo*,
viewing the facts in the light most favorable to the non-moving party.
*Goldstein v. The Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337,
340 (4th Cir. 2000); *Binakonsky v. Ford Motor Co.*, 133 F.3d 281,
284-85 (4th Cir. 1998). Summary judgment is appropriate if "the
pleadings, depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56.

### B.

In West Virginia, a plaintiff suing for legal malpractice must prove
"(1) the attorney's employment; (2) his neglect of a reasonable duty;
and (3) that such negligence resulted in and was the proximate cause
of loss to the client." *Keister v. Talbott*, 391 S.E.2d 895, 898 (W. Va.
1990). Here, Appellants claim that Appellees' failure to respond to
Ashland Oil's discovery resulted in the suit's dismissal. Appellees
contend that the state court's decision that "the failure to comply with
the discovery requests . . . rests with the individual [Plain-
tiffs/Appellants]" collaterally estops Appellants from prevailing in
this action.

Under 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect as they would give the judgment under the law of the state in which the judgment was rendered. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986)). The doctrine of collateral estoppel forecloses the re-litigation "'of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate.'" *Sedlack v. Braswell Serv. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (quoting *Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994)). Under the doctrine, an issue that has been actually and necessarily determined "is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979).

For collateral estoppel to apply under West Virginia law, its proponent must prove the existence of four elements: "(1) the issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Haba v. The Big Arm Bar & Grill, Inc.*, 468 S.E.2d 915, 919 (W. Va. 1996).

Appellants' appeal implicates the second and fourth factors of the collateral estoppel inquiry. Appellants' first contention — that a dismissal for the failure to effect discovery does not constitute a final adjudication on the merits of the State Court Action — can be easily resolved, as Appellants confuse the issue that must have been adjudicated in the State Court Action. The State Court Action need not have been adjudicated on the merits, but the issue to which Appellees raise collateral estoppel must have been adjudicated on the merits. Here, that issue is whether Appellants or Appellees caused the dismissal of the State Court Action. The state court decided that issue on its merits.

Appellants' second contention is more troublesome. Appellants claim that they did not have "a full and fair opportunity to litigate the issue in the previous forum." It is well settled that the full-and-fair-

opportunity formulation generally requires that a litigant receive "reasonable notice of the claim against him *and* opportunity to be heard in opposition to that claim." *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982) (quoting 1B *Moore's Federal Practice* P 0.411 at 1252 (2nd ed. 1982)) (emphasis added). The "right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution." *Blonder-Tongue Labs., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329 (1971). *See also* 47 Am. Jur. 2d Judgments § 650 (1995) (the "full and fair" formulation generally means "that a person cannot be bound by a judgment unless he has had reasonable notice of the claim against him and opportunity to be heard in opposition to that claim").

A genuine issue of material fact exists regarding whether Appellants received notice of the Motion to Compel, which ultimately led to the dismissal of the State Court Action, and whether they received an opportunity to be heard in opposition to that motion. Regarding their lack of notice, Appellants contend that they did not receive a copy of Ashland Oil's Motion to Compel, did not receive a copy of Appellees' response to the Motion to Compel, and did not receive notice that the February 9, 1995 hearing would address the Motion to Compel. While Appellees claim they provided Appellants a copy of their response to the Motion to Compel, we must view the facts in the light most favorable to Appellants, who contend otherwise. *See Binakonsky*, 133 F.3d at 284-85. Moreover, Appellees' notice of Ashland Oil's Motion to Compel cannot be imputed to Appellants under the facts of this case, see W. Va. R. Civ. P. 6 (when a party is represented by counsel, service of a motion on counsel constitutes service upon the party), where Appellees moved to withdraw and explicitly responded to the motion only on their own behalf. Thus, substantial evidence exists that Appellants knew nothing about Ashland Oil's Motion to Compel until its mention at the February 9, 1995 hearing.

Regarding Appellants' opportunity to be heard in opposition to the Motion to Compel, the undisputed evidence shows that Appellants lacked that opportunity. The state court questioned the Plaintiffs/Appellants only about Appellees' Motion to Withdraw, Plaintiffs/Appellants were not allowed to object to Appellee Colapinto's testimony, Plaintiffs/Appellants were not offered the opportunity to question Appellee Colapinto, and the state court ruled on the Motion

to Compel without seeking any argument on that motion from the Plaintiffs/Appellants.

Moreover, Appellees admitted during the state court proceedings that they did not intend to represent Appellants on that motion. For example, Appellees' response to Ashland Oil's Motion to Compel stated that they were filing it "on [their] own behalf because defendant's motion requests that sanctions be assessed against counsel for plaintiff in addition to plaintiffs themselves." Moreover, Appellee Colapinto stated at the February 9 hearing that "if I am adversarial to my own clients on that issue [in other words, the motion to compel], I don't see how I can continue as counsel in this matter, and I would move to withdraw on that ground immediately." Thus, the undisputed evidence shows that Appellants lacked the opportunity to respond to the Motion to Compel.

## III.

For the foregoing reasons, the judgment of the district court is vacated and the suit remanded for further proceedings.

*VACATED AND REMANDED.*