# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State ex rel. Navient Solutions, LLC,**
**Defendant Below, Petitioner**

**vs)  No. 19-0874** (Ohio County 17-C-17)

**The Honorable Ronald E. Wilson and**
**Rebecca L. Brogan-Johnson,**
**Plaintiff Below, Respondents**

**FILED**
**May 27, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Navient Solutions, LLC (hereinafter "petitioner")[1] seeks to invoke this Court's original jurisdiction to prohibit the enforcement of the Circuit Court of Ohio County's order denying cross-motions for summary judgment. Petitioner and respondent Rebecca Brogan-Johnson (hereinafter "Ms. Brogan-Johnson")[2] both filed motions for summary judgment on Ms. Brogan-Johnson's claims arising from petitioner's handling of her federal consolidation loan. Petitioner moved for summary judgment on the basis of 1) federal preemption by regulations promulgated pursuant to the Federal Family Education Loan Program ("FFELP")[3] of the Higher Education Act, 20 U.S.C.A. § 1001 *et seq.*; 2) absence of breach of contract; and 3) estoppel. Upon denial of summary judgment purportedly based on genuine issues of material fact, petitioner twice requested the circuit court to issue findings of fact and conclusions of law in support of its denial, to enable it to seek a writ of prohibition from this Court; these requests were expressly refused. Petitioner brought the instant petition seeking extraordinary relief, challenging the circuit court's denial of its motion for summary judgment; however, petitioner likewise asserts that the circuit court improperly refused its request for a more detailed order in aid of its petition before this Court.

This Court has considered the parties' briefs and the record on appeal, both having waived oral argument. Upon consideration of the standard of review and the applicable law, we find that this case satisfies the "limited circumstances" set forth in Rule 21(d) of the West Virginia Rules of Appellate Procedure and hereby issue a writ of mandamus, as moulded, directing the

---

[1] Petitioner is represented by Carte P. Goodwin, Esq. Jared M. Tully, Esq., and Alex J. Zurbuch, Esq. of Frost Brown Todd LLC.

[2] Ms. Brogan-Johnson is represented by Frank X. Duff, Esq. and Sandra K. Law, Esq. of Schrader Companion, Duff & Law, PLLC.

[3] *See* 34 C.F.R. Subt. B, Ch. VI, Part 682 *et seq.*

Circuit Court of Ohio County to enter an order containing more detailed findings and conclusions sufficient to allow this Court to consider the substance of the court's ruling.

## I. Factual and Procedural History

Following law school graduation in 2002, Ms. Brogan-Johnson consolidated her student loans with a consolidation loan made pursuant to the FFELP. Shortly thereafter, she added additional loans to the consolidation, resulting in a total balance of $73,322.89 at an interest rate of four percent. At the time, her loan was serviced by Citibank. Ms. Brogan-Johnson alleges that thereafter, she took advantage of an incentive rate offer from Collegiate Funding Services which provided that after making her payment timely for twelve months, her rate would drop to three percent. Neither Ms. Brogan-Johnson nor petitioner apparently has possession of the incentive rate offer and terms[4]; however, it appears undisputed that petitioner began making payments pursuant to this offer, resulting in a commensurate rate reduction to three percent as of November, 2003. In 2011, Citibank sold the loan to petitioner (then known as "Sallie Mae") and honored the three percent incentive rate. Ms. Brogan-Johnson's minimum monthly payment was $307.11. She continued to make these payments for the next approximate thirteen years.

At some point, petitioner allegedly determined that Ms. Brogan-Johnson would not be able to repay her loan within the federally-required thirty years.[5] As a result, in April 2016, petitioner sent Ms. Brogan-Johnson a letter notifying her that her minimum monthly payment would increase to $328.89, along with a listing of potential reasons why the payment had increased.[6] Ms. Brogan-Johnson then made inquiry of petitioner as to why her minimum payment had changed; she received a couple of different responses including that 1) the loan would not be paid off in time, and 2) the "end date" was different for each of her consolidated loans and were therefore "align[ed]" and "redisclosed." She made further requests for various types of documentation and information, all which petitioner responded to in some form or fashion, but which Ms. Brogan-Johnson characterized as incomplete or inadequate.

Ms. Brogan-Johnson then initiated investigatory procedures with the Consumer Financial Protection Bureau ("CFPB"). In response to Ms. Brogan-Johnson's complaint, petitioner advised that minimum monthly payments are calculated using the original four percent interest rate, but that it was only actually collecting three percent interest, with the difference going to principal. It noted that as a result, Mrs. Brogan-Johnson would repay less interest over the life of her loan and likely pay it off sooner. Nevertheless, petitioner advised that it would be willing to recalculate the payment using a three percent interest rate, reducing the monthly minimum payment to $303.17 (four dollars less than it was originally). Petitioner also conceded that this

---

[4] Petitioner concedes it is familiar with the general terms of such offers, as authorized by the FFELP, and in fact honored the rate.

[5] *See* 34 C.F.R. § 682.209(e)(2)(vi) (2013) requiring loans equal to or greater than $60,000 to be repaid in "not more than 30 years."

[6] Some of the reasons included deferment of forbearance, by request, change in school separation date or interest rate, capitalization of interest, past delinquencies, or "[y]our repayment plan has changed." Ms. Brogan-Johnson maintains none of these apply to her.

reduced payment would result in the loan being paid off within thirty years. The CFPB materials provided an option for Ms. Brogan-Johnson to dispute petitioner's response and procedures therefor.

Ms. Brogan-Johnson declined to press further with the CFPB and filed the instant complaint. In her complaint, she alleged violations of Sections 127 and 128 of the West Virginia Consumer Credit and Protection Act ("WVCCPA") for "fraudulent, deceptive, and/or misleading representations" and "unfair or unconscionable means," as well as breach of contract. *See* W. Va. Code §§ 46A-2-127 and 128.

After some discovery, both parties moved for summary judgment. On September 4, 2018, the circuit court issued an order denying both motions, stating simply that "there are clearly genuine issues of material fact existing" and ruling that the parties' arguments were "rejected." On April 30, 2019, petitioner filed a "Notice of Intent to File Writ of Prohibition," and requested that "[a]s a prerequisite to filing the writ of prohibition," the circuit court set out in an order containing "'findings of fact and conclusions of law that support and form the basis of its decision[,]'" citing Syllabus Point Six of *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W. Va. 358, 508 S.E.2d 75 (1998).

On July 25, 2019, petitioner's counsel wrote to the circuit court again requesting an order containing findings of fact and conclusions of law. In response, on August 2, 2019, the circuit court entered an "Order Denying on the Ground of Redundancy" the request for findings and conclusions. The circuit court noted that the law on summary judgment "couldn't be any clearer" and that it did make findings in support of its decision, referring to its statement that there were genuine issues of material fact. The order noted that discovery had not been completed, that plaintiff "has a right to pursue those claims," and that "[i]t's not the right of the trial judge, at this time, to make a judgment as to whether plaintiff's claims are cognizable[.]"[7] The court distinguished *Gaughan*, stating that it involved a discovery dispute which necessarily required findings to substantiate the basis of the court's decision. Here, however, the circuit court stated it "has stated the reasons for its factual decision and its conclusion of law." The court then denied the request "on the ground of redundancy—it has already been done and needs no further elaboration[.]" Petitioner thereafter filed the instant petition for writ of prohibition.

## II. Standard of Review

As to the issuance of a writ of prohibition,

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as

---

[7] The order further suggests that the motion was premature because discovery was incomplete. However, at no time did either party assert incomplete discovery as a defense to summary judgment; in fact, as indicated, both parties filed cross-motions, asserting the case was ripe for summary disposition.

direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). While petitioner seeks blanket prohibition relief from the circuit court's order, it concedes in its brief that the threshold issue—whether the circuit court should be compelled to issue a more specific order containing findings of fact and conclusions of law—is more appropriately given to mandamus relief. In that regard,

[m]andamus is a drastic remedy to be invoked only in extraordinary situations; therefore, a party seeking such a writ must satisfy three conditions: (1) there are no adequate means for the party to obtain the desired relief; (2) the party has a clear and indisputable right to the issuance of the writ; and (3) there is a legal duty on the part of the respondent to do that which the petitioner seeks to compel.

Syl. Pt. 2, *State ex rel. Sowards v. Cty. Comm'n of Lincoln Cty.*, 196 W. Va. 739, 474 S.E.2d 919 (1996). With these standards in mind, we address the parties' arguments.

### III. Discussion

Petitioner asserts that the circuit court committed clear legal error in 1) failing to issue a more detailed order; 2) refusing to enter summary judgment in its favor of the issue of federal preemption; and 3) refusing to enter summary judgment in its favor on the merits of Ms. Brogan-Johnson's breach of contract claim, due to a critical failure of proof and/or the legal concept of equitable estoppel. However, we find that the first issue—whether the circuit court erred in refusing to issue a more detailed order—is dispositive of the case at this juncture. The circuit court's failure to do so inhibits—if not precludes—this Court's review of the merits-based issues asserted in the petition for writ of prohibition, as effectively conceded by petitioner.

As indicated above, petitioner twice requested the circuit court to issue an order containing specific findings of fact and conclusions of law for the purpose of seeking a writ of prohibition. The circuit court refused, merely restating its position that genuine issues of material

fact precluded it from ruling on the issues raised in the motion for summary judgment.[8] The circuit court failed, in both the substantive order denying summary judgment and its order declining to issue a more specific order, to identify in any respect the particular factual issues it found to be disputed and how those issues precluded it from ruling on the issues presented in the motion. We find this to be clearly erroneous and contrary to this Court's precedent.

As a general matter, it is well-established that "[a]n order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable." Syl. Pt. 8, *Aetna Cas. and Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). However, when a party desires to seek an extraordinary writ, this Court has made clear that the party must request, and the circuit court must prepare, specific findings and conclusions rendering its decision susceptible of appellate review:

> A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. *When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law.* Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.

Syl. Pt. 6, *Gaughan*, 203 W.Va. 358, 508 S.E.2d 75 (emphasis added). The circuit court below distinguished *Gaughan's* requirement of a detailed order on the basis that the issue presented in *Gaughan* was a discovery dispute, which by its nature required a more detailed order for review. Ostensibly, the circuit court believed that in the context of summary judgment, disputed issues of material fact precluded the very findings and conclusions requested.[9]

---

[8] We are careful to note that the parties' mere assertion of the absence of disputed facts is not binding upon a circuit court. *See Marcus v. Staubs*, 230 W. Va. 127, 141, 736 S.E.2d 360, 374 (2012) ("[T]he mere fact that the parties seemingly agreed that there were no disputed issues of material fact does not constrain the trial court to accept that representation as true and enter summary judgment for one of the parties."). However, it is in this event that the circuit court's identification of the purportedly disputed facts is most essential for purposes of appellate review. *See* discussion *infra*.

[9] In this regard, we concede to the circuit court's suggestion that the specific phrasing of "findings of fact and conclusions of law" facially suggests that where it finds disputed issues of fact, this task is rendered largely unfeasible. However, in the context of a denial of summary judgment, it is fairly apparent that what is necessary for appellate review pursuant to an

Recently however, the Court has reiterated *Gaughan's* requirement specifically in the context of a denial of summary judgment. In *State ex rel. Vanderra Res., LLC v. Hummel,* 242 W. Va. 35, 829 S.E.2d 35 (2019), the Court considered an extraordinary writ seeking to require circuit courts to routinely issue findings of fact and conclusions of law in all cases denying summary judgment. This Court flatly refused to make this a rote requirement of a summary judgment denial and disavowed prior cases which seemed to suggest that such findings and conclusions were required upon routine denial of summary judgment. However, the Court plainly reserved from its holding instances where a party desires to seek an extraordinary writ and informs the circuit court of such, deferring to the rule articulated in *Gaughan*:

> Vanderra should have informed the circuit court in advance that it intended to file a petition for a writ with this Court and requested a detailed order. *Only at that point would the circuit court have been obligated to make such findings. Absent Vanderra's request*, the circuit court was under no duty to set out these findings in its order denying summary judgment.

*Id*. at ___, 829 S.E.2d at 44 (emphasis added). The Court further concluded that because Vanderra made no such request for a detailed order, it could not consider the merits of the circuit court's denial of summary judgment, even under the auspices of its original jurisdiction:

> Because this Court does not have an order before it containing detailed findings explaining the facts and evidence on which the circuit court based its ruling on the substantive issues Vanderra now argues, we have no means to ascertain the rationale underlying its

---

extraordinary writ is a more detailed order identifying the particular facts found to be in dispute and some degree of analysis of the manner in which these disputed facts preclude summary disposition, to the extent it is not apparent on its face. As this Court has explained,

> [a]ppellate courts, on review, rely heavily on the trial judge's order; the order is extremely important. The order often assists appellate courts in understanding what the trial court did and why, and good orders often rebut allegations made by appealing parties in briefs and arguments. If the lower tribunal is interested in having its decision affirmed, then the lower court should assist the appellate courts by providing comprehensive, well-reasoned orders. Submission of a comprehensive order assists an appellate court in finding a way to affirm the lower court's order.

*P.T.P., IV by P.T.P, III v. Bd. of Educ. of the Cty. of Jefferson*, 200 W. Va. 61, 65, 488 S.E.2d 61, 65 (1997) (footnote omitted). This observation is no less true in the case of extraordinary writs. While the standard for relief under these circumstances is considerably higher, the Court is no less in need of a window into the lower court's reasoning and basis to determine whether relief is appropriate.

6

> denial of summary judgment and determine whether the factors for issuing an extraordinary writ have been met.

*Id*. at \_\_\_, 829 S.E.2d at 44-45.

Petitioner herein did precisely what Vanderra failed to do:  advised the circuit court that an extraordinary writ would be sought and requested a more detailed order.  It is clear that *Gaughan* and *Vanderra* stand for the proposition that the circuit court was then obligated to issue a more detailed order substantiating its conclusion that disputed issues of fact precluded determination of the legal issue of preemption and the merits of the underlying causes of action. An order identifying the factual issues which were disputed and the manner in which those issues precluded its ruling on the substantive issues presented is necessary to elucidate the circuit court's analysis and its ultimate conclusion to deny the motion.

In absence of such an order, this Court cannot evaluate the propriety of the circuit court's denial of summary judgment on the substantive issues presented therein.[10]  More pointedly, it is impossible to determine whether the lower court's action is "clearly erroneous" for purposes of issuing a writ of prohibition, where it has presented the Court with no analysis beyond a summary conclusion that there are disputed facts.  We are left merely to guess which facts the circuit court found to be sufficiently in dispute such as to preclude summary judgment and why those facts were material to the legal issue presented.  *See Hively v. Merrifield*, 212 W. Va. 804, 808, 575 S.E.2d 414, 418 (2002) ("[B]efore this Court can review the circuit court's reasons for . . . [ruling as it did], we must know what those reasons are."); *P.T.P., IV*, 200 W. Va. at 65, 488

---

[10] That said, however, we caution the parties that "[p]rohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari." Syl. Pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).  We reiterate, in the strongest terms, that extraordinary relief is not a substitute for appeal. Our ruling in *Vanderra* is not an invitation to attempt to force a circuit court's hand to issue a detailed order upon denial of summary judgment.  Petitions for writs of mandamus or prohibition not plainly bearing the hallmarks of an issue potentially warranting extraordinary relief are strongly discouraged.

We note that the instant matter presents both the largely *legal* issue of federal preemption and what appear to be garden-variety "merits" issues involving the breach of contract claim.  We note that the preemption issue is one for which a more specific order detailing the circuit court's analysis is most needed; this issue requires a claim by claim analysis and legal determination as to whether the claims are federally preempted:  "[W]e find the most reasoned approach is to analyze the particular provisions or claims made under state law to determine if each conflict with and are therefore preempted by federal law." *Adams v. Pa. Higher Educ. Assistance Agency*, 237 W. Va. 312, 319, 787 S.E.2d 583, 590 (2016); *see In re Estate of Sauers*, 32 A.3d 1241, 1248 (Pa. 2011) ("Issues of preemption comprise pure questions of law[.]").  While we do not foreclose the notion that fact issues may on occasion preclude a pre-trial ruling on preemption, it is in this instance that it is critically important for the circuit court to identify the precise disputed factual resolutions which would benefit its analysis of preemption.

S.E.2d at 65 ("So that we may provide meaningful appellate review, the lower court needs to provide us with more than a simple conclusion.").

We therefore conclude that petitioner has demonstrated a clear entitlement to a more detailed order, that our precedent obligates the circuit court to prepare such an order, and that petitioner has no other adequate means to compel such an order. While petitioner presents this writ as one sounding in prohibition, "[i]n appropriate situations, this Court has chosen to treat petitions for extraordinary relief according to the nature of the relief sought rather than the type of writ pursued." *State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W. Va. 696, 699, 619 S.E.2d 209, 212 (2005). *See also State ex rel. Potter v. Office of Disciplinary Counsel of State*, 226 W. Va. 1, 2 n.1, 697 S.E.2d 37, 38 n.1 (2010) ("[T]his Court has, in past cases, treated a request for relief in prohibition as a petition for writ of mandamus if so warranted by the facts."); *State ex rel. Beirne v. Smith*, 214 W. Va. 771, 774, 591 S.E.2d 329, 332 (2003) ("Although Mr. Bradley brought his case as a petition for a writ of prohibition, while Mr. Beirne requested a writ of mandamus, we choose to treat each as a petition for a writ of mandamus, because both petitioners wish to compel the Commissioner to do an affirmative act[.]"); *State ex rel. Sandy v. Johnson*, 212 W. Va. 343, 346 n.1, 571 S.E.2d 333, 336 n.1 (2002) ("Although this case was brought and granted as a petition for a writ of prohibition, we choose to treat it as a writ of mandamus action.").

Accordingly, for the foregoing reasons, we grant petitioner a writ of mandamus and direct the Circuit Court of Ohio County to issue an order containing sufficient detail and exposition of its analysis such as to permit this Court to consider the substance of its denial of summary judgment in accordance with our longstanding requirements for issuance of an extraordinary writ.

Writ granted as moulded.

**ISSUED**:  May 27, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

8